UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cr-107-MOC-3

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| **ANTRELL NACHEF WALKER,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 79). The Government has responded in opposition to the motion. (Doc. No. 85). Defendant has filed a Reply to the Government's response. (Doc. No. 86). For the following reasons, Defendant's Motion is **DENIED**.

### I. BACKGROUND

Defendant pled guilty on July 20, 2020, to two counts in a 25-count Bill of Indictment alleging conspiracy in violation of 18 U.S.C. § 371 to commit aggravated identity theft (18 U.S.C. § 1028A) and to illegally acquire and possess firearms and ammunition. (Doc. No. 40); See 18 U.S.C. § 922(a)(6) & 922(g)(1)). The indictment also charged conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 1349 and substantive counts alleging violations of 18 U.S.C. § 922(a)(6), 18 U.S.C. § 922(g)(1), and 18 U.S.C. § 1028A. (Doc. No. 20). Defendant pled guilty pursuant to a plea agreement to conspiracy in violation of 18 U.S.C. § 371 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. See Plea Agreement and Acceptance and Entry of Guilty Plea, (Doc. Nos. 38, 40). The Factual Basis filed with Defendant's plea

1

agreement describes a two-year conspiracy—between January 2018 and March 2020—in which Defendant and his co-conspirators, brothers Tyquis and Twyjuan Jenkins, used stolen identities to commit fraud and illegally acquire and possess firearms that they otherwise could not obtain because they were convicted felons. See (Factual Basis and Final Pre-Sentence Report (PSR), (Doc. Nos. 39, 50).

Throughout the conspiracy, Defendant and the Jenkins brothers would manufacture or purchase identification cards with victims' names and personal identifying information (PII), but with the co-conspirators' photographs. (Id. at ¶ 7). They then used these counterfeit identification cards and stolen identities to acquire and pay for firearms and ammunition at shooting ranges. (Id.). Defendant—a previously convicted felon—can be seen in photographs posted on social media in which he and his co-conspirators posed with semiautomatic weapons. (Id.). Defendant used various means to fraudulently obtain money and goods besides firearms. (Id. at ¶ 9). Defendant would "clone" payment cards by encoding the magnetic strip of a card with the account number and expiration date of a stolen credit card. (Id.).

Finally, Defendant and his coconspirators operated a collusive bank customer scheme in which they would recruit people to voluntarily provide their bank debit cards and online banking information for a small fee, knowing that their debit cards and banking information would be used to commit bank fraud. (Id.). Defendant's criminal history includes a felony conviction in Mecklenburg County, North Carolina, for conspiracy to commit motor vehicle larceny while he was 18 years old. (Id. at ¶ 31). Defendant was given a suspended sentence of six to 17 months in prison and 36 months supervised probation for this offense. (Id.). Defendant repeatedly violated his probation.

This Court imposed a sentence of 37 months confinement and three-years supervised

release for the instant offenses. See (Doc. No. 68). In reaching its sentence, the Court considered Defendant's physical and mental disabilities, including his diagnosis of sickle cell anemia and depression. (Doc. No. 50 at ¶¶ 43–44). Defendant, now age 24, is currently serving his sentence at USP Allenwood in Pennsylvania, with an anticipated "good time" release date of November 28, 2022. (Doc. No. 33). Defendant has been detained in federal custody since his initial appearance on May 5, 2020. (Doc. No. 50 at 1). However, the Bureau of Prisons ("BOP") has credited Defendant's time in state custody on a related charge from March 17, 2020, through May 5, 2020. Including this credit, Defendant has served approximately 24 months of his 37-month sentence, and has approximately 54 days credit for good conduct time. However, Defendant lost approximately 27 days good time credit for allowing an inmate with restricted privileges to use his email.

On or about January 2, 2022, Defendant submitted a request for compassionate release to the warden at USP Allenwood, which request was denied on or about January 6, 2022. Defendant filed the instant pro se Motion on or about February 22, 2022. (Doc. No. 79). The government agrees that more than 30 days have passed since Defendant's request to the warden, and therefore he has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

In his pro se motion, Defendant requests compassionate release based on his medical history, which was fully described in the PSR, the Defense Sentencing Memorandum, and Defendant's Motion for Compassionate Release filed before his sentencing hearing. See PSR, (Doc. No. 50 at ¶ 44); Sentencing Memorandum, (Doc. No. 63). Defendant's BOP medical records as well as his pro se motion confirm that he has received at least one dose of the Johnson & Johnson's Janssen COVID-19 ("J&J") vaccine. (Id. at 11–12). Defendant's BOP Medical records also reflect that BOP undertook appropriate diagnosis and treatment of his sickle cell disease and

3

has provided appropriate medication for his depression.

BOP made extensive changes to its operations in response to the COVID-19 pandemic. BOP's health plan has been implemented in consultation with the Centers for Disease Control (CDC) and the World Health Organization (WHO) and those efforts continue. BOP's aggressive efforts to prevent, contain, and treat COVID-19 have extended to USP Allenwood, where Defendant is currently incaracerated. USP Allenwood is a high security penitentiary that institution houses approximately 622 inmates. USP Allenwood is presently one of 50 BOP facilities at Operational Level 1, BOP's least restrictive COVID operational modification, which means its medical isolation rate is less than 2%, its vaccination rate is 65% or greater, and/or its community transmissions rate is less than 50 per 100,000 over a seven-day period. At present, no inmates or staff are reported positive for COVID-19 at USP Allenwood. Approximately 292 inmates at USP Allenwood previously tested positive and have recovered.

In 2021 and earlier, BOP worked with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP received COVID-19 vaccines as they became available, beginning first with staff members and then inmates in order of priority of need based on CDC guidelines. BOP has now offered COVID vaccines to every inmate and staff member and has administered over 308,000 doses. At USP Allenwood, BOP has fully vaccinated 589 staff members and 2,043 inmates.

## II. DISCUSSION

Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

4

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the Bureau of Prisons filed a motion seeking that relief.

Although not binding on this Court, see United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020), the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if: (1) the defendant is at least 65 years old; (2) is experiencing a serious deterioration in physical or mental health because of the aging process; and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in § 1B1.13 and that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. The court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any

5

Case 3:20-cr-00107-MOC-DCK    Document 87    Filed 05/09/22    Page 5 of 11

rehabilitative efforts made during the defendant's time in the Bureau of Prisons, the defendant's prior criminal history, and the defendant's age at the time he committed his offenses. See id. Nonetheless, § 1B1.13 is instructive for this Court in construing "extraordinary and compelling." The issue is particularly immaterial where, as here, the motion rests on medical grounds, and the Commission has stated a well-accepted definition of the circumstances that qualify as extraordinary. See United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (holding that "§ 1B1.13 is not applicable to defendant-filed motions under § 3582(c)," but recognizing that "it defines, in the medical context, the same substantive term that applies to BOP-filed motions. One might reasonably believe therefore that the term 'extraordinary and compelling reasons' will be defined the same for defendant-filed motions.").

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. See, e.g., United States v. Neal, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020); United States v. Adeyemi, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." United States v. Willis, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (citations omitted).

The COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The USSG policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); see United States v. Roeder, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) ("[T]he

existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); see also United States v. Hegyi, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020 ("the presence of COVID19 in a prison, even in large numbers, does not justify compassionate release on its own.").

However, an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." See USSG § 1B1.13 cmt. n.1(A)(ii)(I). Due to his pre-existing medical condition(s), such a defendant may be less able to protect himself against an unfavorable outcome from COVID-19. See United States v. Tartaglione, 2020 WL 3969778, at *5–6 (E.D. Pa. July 14, 2020) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, nonspeculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting United States v. Somerville, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020)). See also United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021) (affirming denial of compassionate release and observing that "the district court properly considered the CDC guidance that was in effect at the time . . . . Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").

The CDC's list of risk factors was most recently updated on March 29, 2021. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." Here, Defendant presents elevated COVID-19 risk factors related to his diagnoses of sickle cell disease

7

Case 3:20-cr-00107-MOC-DCK   Document 87   Filed 05/09/22   Page 7 of 11

and depression. However, Defendant never presented an "extraordinary and compelling reason" for compassionate release while in BOP custody because he has been vaccinated against COVID-19. According to Defendant's BOP in-take and transfer records, he received a single dose of the J&J vaccine on May 27, 2021, while in the U.S. Marshal's custody in Mecklenburg County. Defendant is also eligible for booster doses of either the Pfizer or Moderna vaccine, but apparently declined any further vaccination when he arrived at USP Allenwood. See BOP Inmate Vaccination form (Sept. 8, 2021). Consequently, Defendant's motion will be denied.

As previously explained, the pertinent USSG policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). Defendant has shown that he has a serious medical condition for which continuous medical treatment is required. Contrary to Defendant's motion, however, he has received appropriate medical treatment for sickle cell disease while in BOP custody, including frequent laboratory tests—including for COVID-19, medication to control his pain, and hospitalization and treatment in a civilian hospital when his sickle cell condition became acute.

Moreover, Defendant is considered fully vaccinated, having received a dose of the J&J vaccine and is eligible for even greater protection if he availed himself of the booster vaccines available at USP Allenwood. According to the CDC, the J&J vaccine was 66.3% effective in clinical trials at preventing laboratory-confirmed COVID-19 infection in people who received the vaccine and had no evidence of being previously infected. See https://www.cdc.gov/coronavirus/2019ncov/vaccines/different-vaccines/janssen.html (accessed on April 22, 2022). More importantly, the J&J vaccine showed high efficacy in clinical trials at preventing hospitalization

and death in people who did get sick. (Id.). Even more significantly, thus far, vaccines are proving remarkably effective not just in limiting infection, but in fulfilling their most important purpose: limiting severe disease and death. The CDC tracks "breakthrough" infections after full vaccination. Studies show that the J&J vaccine with a booster is also effective against the Delta and Omicron variants of COVID-19. Thus, by being vaccinated, Defendant has provided effective "self-care" against the virus and does not present any extraordinary and compelling reason allowing compassionate release. See United States v. Butler, 2022 WL 317753, at *4 (E.D. Mich. Feb. 2, 2022) ("Because existing COVID-19 vaccines diminish the health risks of the Delta and Omicron variants, and these vaccines are available to all federal prisoners, incarceration itself does not increase the danger of COVID-19 to Defendant. In other words, given that COVID-19 vaccines mitigate the potential harm of the Delta and Omicron variants, it is not an 'extraordinary and compelling reason' to grant compassionate release."); United States v. Otero-Montalvo, 2021 WL 1945764, at *3 (E.D. Pa. May 14, 2021) (41-year-old defendant presents asthma and obesity, but has been vaccinated; the court dismisses his complaints regarding prison management, stating, "The BOP and FCI Fort Dix administering vaccinations shows that they are taking the appropriate precautions to the COVID-19 pandemic and are safeguarding inmates.").

In addition to the significant mitigation of Defendant's medical vulnerability as a result of receiving vaccination against COVID-19, Defendant's motion will be denied after consideration of the sentencing factors under 18 U.S.C. § 3553(a). See, e.g., United States v. Doe, 833 F. App'x 366 (3d Cir. 2020) (per curiam) (summarily affirming the denial of compassionate release, in a case in which the defendant presented medical risk, upon holding that the district court did not abuse its discretion in considering the nature of the offense, the defendant's history, and the status of the virus at the facility); United States v. Bullock, 833 F. App'x 934 (3d Cir. 2021) (per curiam)

9

(granting motion for summary affirmance of denial of compassionate release, as the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the 3553(a) factors, including the substantial time remaining to be served on the sentence and the defendant's criminal history and institutional infractions).

As demonstrated by his criminal history and BOP disciplinary record, Defendant continues to present a danger to the community. In the instant offense, Defendant stole the PII of unwitting victims, not only to obtain money and goods, but also to illegally acquire and use semi-automatic firearms at shooting ranges. (Doc. No. 50 at ¶¶ 5-10). Defendant committed these offenses after multiple state arrests and a felony conviction for conspiracy to steal a motor vehicle. (Id. at ¶ 31). While on state probation, Defendant continually violated the conditions of his release. Moreover, Defendant's criminal conduct took place while he was suffering from the same medical and mental conditions he presents today.

Finally, there is insufficient assurance Defendant will comply with the Court's conditions if early release were granted on compassionate grounds. Defendant's plan if released is to live with his mother and apply for disability benefits. (Doc. No. 79 at 1). However, according to a probation report filed on May 3, 2019, Defendant violated his state probation by moving from his mother's residence without notifying his probation officer, failing to report to his probation officer when ordered to do so, and failing to provide his current address. This violation occurred during the conspiracy that resulted in Defendant's conviction in this case. When confronted with this conduct by his probation officer, Defendant responded that he was too young to be sitting at home waiting on probation. (Doc. No. 50 at ¶ 51). Defendant also was smoking unprescribed marijuana three to four times per week. (Id. at ¶ 46). Defendant has failed to demonstrate how early release from his sentence for a serious crime involving illegally possessing semi-automatic firearms protects the

community, reflects the seriousness of his offense, promotes respect for the law, and provides just punishment for his offense. See 18 U.S.C. § 3553(a)(2)(A). Therefore, the Court will deny Defendant's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 79), is **DENIED**.

Signed: May 9, 2022

Max O. Cogburn Jr
United States District Judge